UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES BOWEN,<br><br>    Defendant. | No. 18-cr-00015-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT JAMES BOWEN'S MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. No. 49) |

Pending before the court is defendant James Bowen's motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), based in part on the risks posed to him by the ongoing coronavirus ("COVID-19") pandemic. (Doc. No. 49.) For the reasons set forth below, defendant's motion will be denied.

**BACKGROUND**

On October 15, 2019, after pleading guilty to two counts of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871, defendant Bowen was sentenced to a total of 18 months of imprisonment in the custody of the U.S. Bureau of Prisons ("BOP"), to be followed by a total of 36 months of supervised release.[1] (Doc. Nos. 41, 42.) Defendant is

---

[1] Specifically, defendant was sentenced to 18 months imprisonment and 36 months of supervised release on each of the two counts, with those sentences to be served concurrently. (*See* Doc. No. 42.)

1

currently serving his sentence at the Federal Correctional Institution, Lompoc ("FCI Lompoc"). (*See* Doc. No. 49 at 2.)

On May 16, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (*Id.*) On May 27, 2020, the government filed its opposition, and on May 29, 2020, defendant filed his reply. (Doc. Nos. 56, 60.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

>       (i)       extraordinary and compelling reasons warrant such a reduction; or
>
>       (ii)      the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>       and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also*

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

3

*United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp. 3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As one district court has summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), it must be determined whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id*.  Third, the district court must also

4

consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*Rodriguez,* 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, release must be "consistent with" the sentencing factors set forth in §3553(a)).

## I. Exhaustion

As an initial matter, the court finds that defendant Bowen failed to exhaust his administrative remedies with the BOP before bringing his motion for compassionate release in this court. According to the government, the BOP has been unable to locate any record that defendant submitted a request for compassionate release to the warden where he is incarcerated. (Doc. No. 56 at 17.) In response, defendant appears to suggest that he submitted a request for compassionate release to the BOP and that the BOP subsequently lost it. (*See* Doc. No. 60 at 2.) In some situations, courts have found that such a representation is credible and sufficient to satisfy § 3582(c)(1)(A)'s exhaustion requirement. *See, e.g.*, *United States v. Kazanowski*, No. 1:15-cr-00459-DKW-5, 2020 WL 3578310, at *4 & n.11 (D. Haw. July 1, 2020) (accepting the defendant's representation that he had submitted a request for compassionate release to the BOP when it was referenced in his opening brief and because he was an inmate proceeding *pro se*); *United States v. Richardson*, No. 2:17-cr-00048-JAM, 2020 WL 3402410, at *2 (E.D. Cal. June 19, 2020) (noting that "the BOP has—on several occasions—incorrectly represented the status of inmates' exhaustion efforts" and accepting the defendant's "detailed log of his multiple requests for compassionate release" and a copy of his "follow-up request" as proof that he submitted an earlier request to the BOP).

Here, however, defendant failed to mention any such administrative compassionate release request in his moving papers and still has not presented any evidence that such a request was submitted to the BOP. (*See* Doc. No. 49.) It therefore appears, at least based on the record currently before the court, that defendant did not even attempt to submit a request for

5

1  compassionate release to the BOP.  Courts have deemed such lapses as an inexcusable failure to
2  exhaust administrative remedies.  *See, e.g.*, *United States v. Cruceru*, No. 2:15-cr-00235-TLN,
3  2020 WL 2468414, at *2 (E.D. Cal. May 13, 2020) (finding that failure to even file a
4  compassionate release request as grounds to deny a § 3582(c)(1)(A) motion without reaching the
5  merits of the motion); *United States v. Eberhart*, __ F. Supp. 3d __, No. 4:13-cr-00313-PJH-1,
6  2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) (rejecting a motion for compassionate release
7  in part because of the defendant's failure to "even seek administrative remedies at all").
8       Even assuming that the exhaustion requirement can be waived in circumstances where a
9  prisoner makes no effort to exhaust his administrative remedies, defendant Bowen has
10 nevertheless failed to demonstrate futility or irreparable harm that could justify any such waiver.
11 Defendant's reliance on string citations to irrelevant cases and conclusory assertions of futility
12 and irreparable harm is misplaced.  (*See* Doc. No. 49 at 7–10.)  Accordingly, the court finds that
13 defendant Bowen has failed to his exhaust administrative remedies as required by 18 U.S.C. §
14 3582(c)(1)(A), thereby barring the court's consideration of his motion for compassionate release.

15 **II.     Extraordinary and Compelling Reasons**

16      For the reasons explained below, even if the court were to reach the merits of defendant's
17 motion, it would still deny his motion for compassionate release.[5]
18      According to the Sentencing Commission's policy statement, "extraordinary and
19 compelling reasons" warranting compassionate release may exist based on a defendant's medical
20 conditions, age and other related factors, family circumstances, or "other reasons."  U.S.S.G. §
21 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the
22 policy statement at a time when only the BOP could bring a compassionate release motion, courts
23 have agreed that it may be relied upon by defendants bringing their own motions under the FSA.

---

[5] The court notes that, in a filing characterized as an urgent status report that was filed with the court on June 29, 2020, defendant's counsel included a declaration stating that he had been informed that the warden at FCI Lompoc had denied defendant's request for compassionate release prior to June 5, 2020.  (Doc. No. 63 at 2.)  No documentation reflecting such a denial is attached to the declaration, nor is any mention made of an appeal from that denial to the BOP's Regional Director having been pursued as required under 28 C.F.R. § 542.15(a).  *See* above note 2.  Nonetheless the court will address the motion on its merits despite any failure to exhaust.

*See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id*. at cmt. n.1(A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 tip the scale in favor of release when the particular circumstances of a case are considered in their totality. *See, e.g., Parker,* 2020 WL 2572525, at *9–10 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date,

/////

and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by the BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant argues that extraordinary and compelling reasons exist for his compassionate release because: 1) he is infected with COVID-19 and 2) he has pre-existing diagnoses of asthma and chronic obstructive pulmonary disease ("COPD"). (*See* Doc. No. 49 at 10–11.) The government counters that: 1) defendant has already recovered from COVID-19 and 2) his medical records do not even indicate that he suffers from asthma or COPD. (Doc. No. 56 at 21.) Having reviewed the relevant considerations, the court concludes that defendant has not demonstrated extraordinary and compelling reasons justifying his compassionate release pursuant to § 3582(c)(1)(A).

First, the court is unable to conclude that defendant's medical conditions justify a reduction of his sentence. Defendant, who is only forty-one years old, argues that he suffers from asthma and COPD, exposing him to a higher risk of serious complications from COVID-19. (Doc. No. 49 at 10–11.) According to the Centers for Disease Control and Prevention (the "CDC"), "moderate to severe asthma" creates a "higher risk of getting very sick from COVID-19." Centers for Disease Control and Prevention, People with Moderate to Severe Asthma, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html (last visited July 21, 2020); *see also Woolem v. United States*, No. 1:13-cr-00471-SOM, 2020 WL 2820140, at *5 (D. Haw. May 29, 2020) (collecting medical guidance regarding the interaction between

8

asthma and COVID-19). The CDC has similar guidance regarding COPD. *See* Centers for Disease Control and Prevention, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 21, 2020).

As an initial factual matter, the government is correct that defendant's *prison* health records do not reflect that he has been diagnosed as suffering from asthma or COPD. (*See* Doc. No. 62.) However, his medical records from before he began serving his current sentence do reflect that defendant had been diagnosed as suffering from "unspecified" asthma as well as COPD. (*See* Doc. No. 51-1 at 2, 6, 8.) However, those medical records do not show a diagnosis of "moderate to severe" asthma and, in fact, indicate that his prescription for albuterol to control his asthma with COPD was discontinued on March 1, 2013. (*Id.* at 11.) Thus, defendant's request for compassionate release is therefore not adequately supported. *See Woolem*, 2020 WL 2820140, at *5 ("[T]he court does need to consider how well even moderate or severe asthma is or is not being controlled by medication or other treatment, as well as any effect the treatment might have on complications arising from COVID-19."); *see also United States v. Cisneros*, No. 1:99-cr-00108-SOM, 2020 WL 3065103, at *3 (D. Haw. June 9, 2020) (same).

Even if the court were to accept that defendant currently suffers from some form of asthma or COPD, the court would still need more information about the availability and effectiveness of any treatment program—or lack thereof—in order to find that he had established extraordinary and compelling reasons for his release based on those conditions, since "[c]hronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Ayon-Nunez*, No. 1:16-cr-00130-DAD, 2020 WL 704785, at *3 (E.D. Cal. Feb. 12, 2020); *see also* U.S.S.G. § 1B1.13, cmt. n.1(A)(ii).

Second, defendant has already contracted COVID-19 and, fortunately, is now considered to have recovered from the virus.[6] (Doc. Nos. 56 at 21; 62 at 2.) As a result, granting him release

---

[6] It further appears that defendant only experienced an asymptomatic COVID-19 infection, as he did not experience an elevated temperature and denied having any of the typical more serious COVID-19 symptoms. (Doc. No. 62 at 1–2.)

at this time arguably "will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19." *United States v. Russo*, 1:16-cr-00441-LJL, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020); *see also United States v. Purry,* No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *1 (D. Nev. May 28, 2020) ("The premise of [defendant's] request was that his release would help prevent him from contracting the virus. That need vanished when [defendant] tested positive for the virus."). Even accounting for the possibility of re-infection, the court notes that "many questions remain unanswered about . . . potential recurrence." *United States v. Phillips*, No. 2:19-cr-0081-KJM, 2020 WL 2084808, at *3 (E.D. Cal. Apr. 30, 2020); *see also United States v. McCollough*, No. 2:15-cr-00336-PHX-DLR, 2020 WL 2812841, at *2 (D. Ariz. May 29, 2020) ("Arguments that the [COVID-19] test results may be inaccurate or that Defendant could suffer reinfection are not persuasive and the Court will not speculate about these possibilities.").

The court certainly recognizes that FCI Lompoc initially failed to control the outbreak of COVID-19 at that institution, as the majority of its inmates have tested positive for the virus. *See United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020). (*See also* Doc. No. 60 at 2.) That situation is obviously an extremely serious one. However, it appears that the prison staff is now adequately monitoring and caring for defendant Bowen, who received treatment for an asymptomatic COVID-19 infection and has since recovered. (Doc. No. 62 at 1–2.) Thus, even if defendant could be re-infected, the court cannot find that the current conditions in FCI Lompoc are an "extraordinary or compelling circumstance" warranting defendant's early release after serving only 7 months of the 18-month prison sentence imposed.[7] *See United States v. Eddings*, No. 2:09-cr-00074-JAM-AC, 2020 WL 2615029, at *2 (E.D. Cal. May 22, 2020) (concluding that FCI Lompoc is now able to adequately monitor and care for its inmates); *see also Purry*, 2020 WL 2773477, at *2 (noting that FCI Lompoc "has established and implemented an extensive protocol in response to the outbreak, including the installation of a hospital care unit at the facility and universal testing").

---

[7] Defendant Bowen surrendered into the custody of the BOP on January 8, 2020, following his sentencing on October 15, 2019. (Doc. Nos. 41, 42, 45.)

For all these reasons, the court concludes that defendant has not met his burden of demonstrating extraordinary and compelling reasons for compassionate release under § 3582(c)(1)(A), and therefore his motion will be denied.

**III.     Consistency With the § 3553(a) Factors**

Finally, even if defendant Bowen's motion were supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in sentence would be consistent with the sentencing factors set forth at 18 U.S.C. § 3553(a).[8]  *See Parker,* 2020 WL 2572525, at *11.

As noted above, defendant is currently serving concurrent 18-month sentences on two counts of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  (*See* Doc. Nos. 41, 42.)  With his acceptance of responsibility acknowledged, the U.S. Probation Office determined that his total offense level was 21, that his criminal history category was I, and his advisory sentencing guideline range therefore called for a term of imprisonment of 37 to 46 months.  (Doc. No. 43 at 3.)  The probation officer recommended a below-guideline sentence of 24 months in BOP custody.  (*Id.*)  After considering the § 3553(a) factors, the undersigned varied downward from the advisory guideline range and sentenced defendant to an 18-month term of imprisonment—slightly less than half of the low end of the applicable guideline range.  (Doc. Nos. 41, 42.)  Despite its very serious nature, there were no identifiable victims of defendant's unregistered firearm possession crimes.  However, a large number of firearms were seized from the garage and home of the defendant when it was searched, as were several

---

[8] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider:  the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

11

silencers, AR-15 receivers, and a large amount of ammunition. (Doc. No. 40 at 5–6.) The court also notes that defendant did have a criminal history of driving under the influence, receiving stolen property, and possession of fireworks without a permit; however, his criminal history was not scorable as it occurred more than ten years ago. (Doc. No. 43 at 9–11, 17.)

The court is also not persuaded that defendant has established his post–offense rehabilitation since his sentencing less than ten months ago. In fact, he presents no argument or evidence to support his rehabilitation. *Cf. Parker*, 2020 WL 2572525, at *11 (granting a defendant compassionate release in part because he demonstrated rehabilitation during his imprisonment by earning two associate degrees, participating in other continuing education courses and working as an education instructor, "suicide companion," and career services clerk) (collecting cases). Moreover, even if defendant Bowen had demonstrated his full rehabilitation since October 15, 2019, rehabilitation alone is not enough to warrant compassionate release. *See* 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3.

Lastly, in the court's view, a 7-month sentence would also not adequately reflect the seriousness of defendant's offenses, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See Purry*, 2020 WL 2773477, at *2; *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).[9] As noted, defendant Bowen was sentenced to 18 months of imprisonment for his offenses, a significant downward variance from the guideline

---

[9] Defendant requests that the court release him "to his home on whatever terms it deems necessary," appearing to suggest the possibility of home confinement. (Doc. No. 60 at 3.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, Case No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-CR-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See United States v. Connell*, __ F. Supp. 3d __, 2020 WL 2315858, at *5, n.6 & *7 (N.D. Cal. May 8, 2020).

range calling for a term of imprisonment of 37 to 46 months.  (*Compare* Doc. No. 43, *with* Doc. No. 42 at 3.)  *See* U.S.S.G. Ch. 5, Pt. A.  As of the date of this order, defendant Bowen has served only 7 months of the 18-month sentence, or approximately 39%.  *See United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 26148743, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"); *United States v. Shayota,* No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) ("'The length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." (quoting *Connell*, 2020 WL 2315858, at *6)).

## CONCLUSION

Because defendant Bowen has failed to:  1) exhaust administrative remedies or show good cause for waiver, 2) demonstrate that "extraordinary and compelling" reasons exist justifying his release under 18 U.S.C. § 3582(c)(1)(A), and 3) show that his release from imprisonment at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. No. 49) is denied.

IT IS SO ORDERED.

Dated:  **August 10, 2020**                    /s/ Dale A. Drozd
                                               UNITED STATES DISTRICT JUDGE